## Goddard's Executrix, etc. v. Goddard, Jr., et al.

(Decided November 10, 1914.)

### Appeal from Mercer Circuit Court.

1.  Wills—Construction of.—Under a will providing that a testator's wife who was the executor should hold and manage the testator's farm as she should think best for the interest of herself and the children or that in case she should find that she could not manage the farm and stock profitably she might rent it out or have it worked on the shares, or if it should be the desire of his wife to dispose of the estate both real and personal, she might dispose of it by a private or a public sale and distribute the proceeds as directed in the will, the wife was not required to elect at the death

of her husband whether she would hold the farm or sell it but might rent it out for some years and if she found this unsatisfactory she might sell the property.

2. Wills—Construction of.—The will being of record and all parties interested having notice of its proceedings, the widow is not estopped to exercise her power of sale by the fact that one of the sons bought out others upon the ground that she had elected not to sell the property, she having, in fact, not said or done anything to mislead him.

3. Wills—Codicil—Construction of.—The original will providing that the wife should have $8,000 if the property was sold and in case the estate should realize more than $24,000 then she should receive one-third of the entire amount of the proceeds of the sale, and a codicil providing that if the estate, be it more or less than $24,000, the wife should have $8,000; the original will is modified by the codicil and the wife is entitled to only $8,000 when the property is sold, although it may bring $48,000.

BAILEY D. BERRY and R. W. KEENON for appellant.

O'REAR & WILLIAMS and J. T. WILSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—. Reversing.

W. W. Goddard died testate, a resident of Mercer County, in the year 1901, the owner of valuable real and personal estate.

The material provisions of his will, which was written January 1, 1882, are as follows:

"I hereby appoint my beloved wife, Sarah Eliza Goddard, as executor of my estate to execute and carry out this my last will and testament and direct that no security be required of her, but wish her to advise with my highly esteemed nephew, Captain Robert E. Berry, as also with all of my sons who I trust will assist her in every way in their power. I wish her to hold and manage the farm as she may think best for the interest of herself and our children, more especially our younger children. But in case that she may find that she can not manage the farm and stock profitably she may rent it out or have it worked on the shares, the proceeds to be appropriated as she may think best for hers and the younger children's benefit, say Ina, Ralph, Rea and W. W., Jr., and also Mary Eliza so long as she may remain unmarried. My sons Glave, Nick, Reb and Paul I feel are amply able to support themselves if blessed with health. But if disease or misfortune should befall any

of them, then it would be my most earnest desire that they be well cared for so long as there might be income sufficient for that purpose. But if it should be the desire of my wife to dispose of my estate, both real and personal, I direct that she may dispose of it by a public or private sale, and when such sale may have been made, I direct that the proceeds of same shall be distributed as follows:

"(Viz.)   To my wife Sarah E. Goddard, eight thousand dollars (she to relinquish all right of dower.) In case, however, my estate should realize more than twenty-four thousand dollars then she shall receive one-third of the entire amount of the proceeds of said sale. To my son, Glave Goddard, one thousand dollars. To my son Nick Goddard, one thousand dollars. To my daughter Mary E. Goddard, one thousand dollars. To my son Rebel Goddard, twelve hundred dollars. To my son Paul Goddard, fifteen hundred dollars. To my daughter Ina, fifteen hundred dollars. To my son Ralph, two thousand dollars. To my daughter Rae Goddard, twenty hundred and fifty dollars and to my son W. W. Jr., twenty-five hundred dollars. If it may be that my estate may not amount to twenty-four thousand dollars then after the sum of eight thousand dollars shall be allotted to my wife, Sarah E. Goddard, the remainder shall be divided just in proportion as above stated. In case it shall amount to more than twenty-four thousand, the balance over and above that amount to be divided equally between all of the children. I wish it understood that so long as my wife may hold the farm that the proceeds derived from it are to be appropriated to the maintenance of herself and the younger children, say, Ina so long as she may remain single and W. W. Jr. until he is nineteen years old. In conclusion I will state that in the disposition of my estate I have done just what I have believed to be just and right, the difference in amounts allotted not being made from partiality or greater or less affection for any, but simply owing to the age and experience of each and all of them, and I can but believe that my older children will cheerfully acquiesce, appreciating as they surely must my great desire to protect their almost helpless mother and the younger children."

On June 1, 1887, he made this codicil to his will:

"Being this day in the enjoyment of good health for which, if I know my own heart, I am truly thankful, I

have read and re-read and well considered the contents of my will as written January 1, 1882, and find but little change to make except to be more explicit and that I may not be misunderstood, will say that of my estate, be it more or less than twenty-four thousand, I direct that my wife shall have eight thousand dollars and in regard to the disposition of the amount to our children as heretofore stated I desire that no forced sale be made of any part of my estate for the purpose of paying to older children or even any of them so long as my farm may be held by my wife, but that the proceeds arising from the products of the farm shall first be applied to the maintenance and support of my wife and the younger children as heretofore stated, but should the proceeds of the farm be more than may be necessary (which it most certainly will) for their support and maintenance then I would desire that such overplus be distributed among the older children.''

He added other codicils June 1, 1888, August 20, 1892, March 16, 1895, May 15, 1898, as the circumstances of his children changed, but none of these codicils are material to the controversy before us; his wife, Sarah Eliza Goddard, qualified as executrix of the will and brought this suit on April 2, 1913, to obtain a construction of it; she alleged that after the death of the testator she took possession of the farm and managed it as she thought best, but finding that she could not successfully manage the farm she caused the personal property to be sold and rented out the farm to her son Glave Goddard, who as her tenant, has since occupied the premises; that the arrangement is unsatisfactory and unprofitable and she desires to sell the farm and make a distribution of the proceeds of the sale of both the personal and real property as directed in the will; that Glave Goddard has purchased the interest of three of his brothers and thus owns a four-ninths interest and that he refuses to permit her to sell the land and has executed a mortgage upon it; that two of the grandchildren of a deceased son are also denying her power to sell the land under the will, and that on account of the acts of these parties it will be impossible for her to sell the land without sacrifice. She prayed the judgment of the court construing the will and determining that she had power to sell the land; she averred that the estate was of value forty-eight thousand dollars and prayed

the judgment of the court adjudging her to be entitled to one-third of the estate.

Glave Goddard answered in substance that the plaintiff is now eighty-two years of age and very infirm; that for one year after the probating of the will the plaintiff conducted the farm herself and since then had rented it out, receiving from the rents in the last twelve years the sum of $25,200; that she elected to accept that provision of the will which provided her a maintenance instead of the provision giving her eight thousand dollars in money and under this election had enjoyed the maintenance since her husband's death; that she knew that he was negotiating for the purchase of his brother's interest upon the belief and construction that the plaintiff had then already elected to manage the farm and take her maintenance therefrom instead of exercising the option to sell the farm and take eight thousand dollars and that she could not now assert the right to sell the farm. The plaintiff demurred to the answer; the demurrer was carried back to the petition and sustained to it. The plaintiff's petition having been dismissed, she appeals.

1. The first question to be determined is the power of the executrix to sell the land at this time.

It will be observed that by the will the testator empowers his wife to hold and manage the farm as she may think best for the interest of herself and children, more especially the younger children; but in case she may find she can not manage the farm and stock profitably, she may rent it out or have it worked on shares, and if it should be the desire of the wife to dispose of the estate, both real and personal, she may dispose of it by public or private sale and distribute the proceeds as directed in the will. There is nothing in these provisions to require an election by the wife between managing the farm herself, or renting it out, cultivating it on shares or selling both the real and personal property. When the will was written a number of the testator's children were infants and he manifestly intended to confer upon his wife a large discretion as to the best course to be pursued for the interest of herself and the infant children. When she managed the place personally a while she did not elect later not to exercise the other powers given her by the will, and when she had rented it out for a number of years and was not satisfied with the renting of it, she had made no election not to exercise the power of sale. She was not called upon to make any election

for it was the testator's clear purpose to vest in her discretion to be exercised as circumstances changed. To illustrate: It was to the interest of the family that the home should be preserved and the younger children given the benefit of a home, but although the executor might have thought it unwise to sell under these conditions, a very different situation would be presented when the children were all grown and the mother might deem it to their interest to sell the property and to distribute to them then their part of the proceeds rather than have them wait for a distribution at her death. We think it was the contemplation of the testator to commit to his wife the discretion of determining when the time should come for a sale cf the property. That this was his meaning is brought out by these words:

"I wish it understood that so long as my wife may hold the farm." And this is also shown by this provision of the codicil:

"I desire that no forced sale be made of any part of my estate for the purpose of paying to older children or even any of them so long as my farm may be held by my wife."

The answer of Glave Goddard does not show that his mother misled him in any way and the mere fact that she had not exercised the power of sale up to that time did not warrant him in concluding that she would not do so thereafter. The will was of record; each of them was charged with notice of its provisions. No estoppel arises from mere silence where the facts are equally known to both parties.

We, therefore, conclude that the circuit court erred in sustaining the demurrer to the plaintiff's petition and in overruling the demurrer to the answer of the defendant Glave Goddard.

2. The remaining question is, how much is the wife entitled to out of the proceeds of the sale of the real and the personal property under the will? It will be observed that in the original will she is given eight thousand dollars, she to relinquish all right of dower, and in case the estate should realize more than $24,000 she shall receive one-third of the entire amount of the proceeds of the sale, but in the codicil made five years afterwards there is this provision:

"That I may not be misunderstood will say that if my estate, be it more or less than $24,000, I direct that my wife shall have $8,000."

It is insisted for the wife that the testator's purpose was to provide in this codicil for the contingency that his estate did not amount to $24,00 and that his meaning in adding these words was that she was to have the eight thousand although the whole estate was less than the $24,000. But this is not the fair meaning of the words; this meaning would have been conveyed if the word "more" had been omitted, but when the testator uses the words "more or less than $24,000" the natural meaning of the words is that he was providing for the contingency of the estate either exceeding $24,000 or falling below it and that he meant that in any event his wife was to have $8,000 if the property was sold and a distribution made.

Judgment reversed and cause remanded for further proceeding consistent herewith.